UNITED STATES, Appellee,

v.

**Zane A. ELLIS, Senior Airman, U.S. Air Force, Appellant.**

No. 63,167.
ACM 27344.

U.S. Court of Military Appeals.

Argued May 9, 1990.

Decided Sept. 6, 1990.

For Appellant: *Captain Paul M. Dankovich* (argued); *Colonel Richard F. O'Hair* (on brief).

For Appellee: *Captain David G. Nix* (argued); *Colonel Robert E. Giovagnoni, Lieutenant Colonel Joseph J. Urban,* USAFR (on brief); *Major Terry M. Petrie.*

*Opinion of the Court*

EVERETT, Chief Judge:

A general court-martial consisting of a military judge alone tried Senior Airman Ellis on charges that he had committed sabotage on two aircraft, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934, and had made a false official statement to his first sergeant, in violation of Article 107, UCMJ, 10 USC § 907. Appellant pleaded not guilty; but he was convicted of making the false official statement, and of willfully damaging government property, in violation of Article 108, UCMJ, 10 USC § 908. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $400 pay per month for 24 months, and reduction to E-1. The convening authority approved the sentence except for confinement and forfeitures exceeding 18 months; and the Court of Military Review affirmed the approved findings and sentence in an unpublished opinion.

Appellant having petitioned for review, we specified this issue:

> WHETHER, AS A MATTER OF LAW, APPELLANT COULD BE FOUND GUILTY OF VIOLATING ARTICLE 107, UCMJ, 10 USC § 907, WHERE THE ALLEGEDLY FALSE OFFICIAL STATEMENT WAS AN ANONYMOUS NOTE TO HIS FIRST SERGEANT.

I

Ellis was a life support technician assigned to the Fighter Weapons School at Nellis Air Force Base, Nevada. Among his responsibilities was maintenance of survival kits in various aircraft. Unfortunately for Ellis, in the summer of 1987, an inspection of the kits for which he was responsible on some F-16s revealed that the life

rafts therein were not properly secured and so would not function properly in the event of an ejection. Consequently, appellant was decertified as a specialist, and an administrative discharge action was initiated against him.

This administrative proceeding moved slowly. However, in July 1988, appellant's first sergeant notified him that he would be discharged the next morning. That evening, Ellis went inside a hanger and unlocked the life rafts in two aircraft. As a result, they would not have functioned properly in the event of an emergency—just as had been true of the life rafts which appellant had failed to maintain properly the year before.

With the aid of his girl friend, Ellis then prepared an anonymous letter which stated:

> I am writing you to let you know that the survival kits that were found in SSgt [sic] Ellis work were my doing. Me and SSgt had some words and I wanted him out of the section, but not out of the Air Force. If you don't believe me check F–15 Kit 3293 A/C 2025 and F–15 Kit 3351 A/C 245. They are messed up the same way I did Ellis. I'm sorry for the trouble I caused SSgt Ellis, I now realize I was wrong.

Copies of this document were distributed to appellant's first sergeant and various other individuals. As a result, the aircraft referred to in the anonymous note were inspected and found to contain problems with their survival kits.

Ellis apparently had hoped that, by means of the anonymous note, he would be able to exculpate himself with respect to his previous failures, avert the pending administrative discharge, and obtain his restoration to his prior duties. Instead, his actions resulted in his trial by court-martial.

## II

The facts of this case are novel. Indeed, we have not been referred to any other prosecution either under Article 107 or its counterpart, 18 USC § 1001, which is predicated on making an anonymous statement. Moreover, appellant contends that an anonymous statement is inherently so suspicious and unreliable that it could never be viewed as "official" within the purview of Article 107. We reach a different conclusion.

In *United States v. Jackson*, 26 MJ 377 (CMA 1988), this Court concluded that a statement may be "official" for purposes of Article 107, even though no "official duty" existed to make the statement. *Id.* at 379. Therefore, a servicemember who made a false statement to a criminal investigator could be properly convicted, even though he had no duty to make the statement in the first place.

As we pointed out in *Jackson*, our construction of Article 107 paralleled that which the Supreme Court had given to 18 USC § 1001 in *United States v. Rodgers*, 466 U.S. 475, 104 S.Ct.1942, 80 L.Ed.2d 492 (1984). Likewise, it conformed to the interpretation we had given Article 107 in *United States v. Collier*, 23 USCMA 173, 48 CMR 789 (1974), which upheld a servicemember's conviction for falsely reporting to the military police that his car stereo had been stolen. As we explained therein:

> Having voluntarily undertaken to report the theft of his stereo, appellant assumed the obligation to report it truthfully. The report of a crime to law enforcement personnel carries with it indicia of officiality.

23 USCMA at 175, 48 CMR at 791.

The specification under which Ellis was found guilty alleged that he made a false official statement to his first sergeant. Clearly appellant intended that the first sergeant and others should take official action as the result of the anonymous note. Indeed, the very purpose of the note was to have them inspect the two aircraft which had been mentioned in order to determine whether the survival kits functioned. In turn, Ellis anticipated that, once this information had been verified as accurate, military authorities would believe that the other representations in the anonymous note

were accurate and would terminate the efforts to discharge him from the Air Force and would restore him to his earlier duties. Furthermore, it certainly should have been foreseeable to Ellis that—as actually occurred—not only the aircraft mentioned in his note would be inspected but also several others in order to determine how widespread the damage might be.

Even though an anonymous report is suspect, it is not necessarily unreliable. Frequently, probable cause for an arrest or a search has been predicated on an anonymous report—when properly corroborated. *Cf. Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Certainly Ellis was well aware that military authorities would react immediately to the slightest suggestion—even if anonymous—that safety equipment would not function. Indeed, appellant would never have made the false report if he had anticipated that it would have been simply disregarded.

Appellant believed that official action would be taken by the recipients of the anonymous letter which stated that two of the survival kits were "messed up." He cannot complain now that his anonymous letter is treated as an "official" statement when Air Force personnel, acting within the scope of their official duties, took action based thereon.

We recognize that in some instances anonymous reports are actively solicited. *Cf. Court of Military Review v. Carlucci,* 26 MJ 328 (CMA 1988). We need not decide whether, when a false report is made anonymously in response to such solicitation, it creates criminal liability for a servicemember under Article 107 or for others under 18 USC § 1001 or whether, instead, there is an implicit and binding promise of immunity with respect to such report.

### III

The decision of the United States Air Force Court of Military Review is affirmed.

Judge COX concurs.

SULLIVAN, Judge (concurring):

Appellant's letter and two copies were delivered to Captain Wells, the area defense counsel; Master Sergeant Sawtelle, the First Sergeant of the Fighter Weapons Wing; and Colonel Keys, Commandant of the Fighter Weapons School. The letter and copies were unsigned and were delivered surreptitiously. The purpose of the letter was to forestall appellant's administrative discharge and to advise appropriate command personnel of someone else's tampering with the aircraft.

The specified issue asks whether, under the circumstances of this case, an anonymous letter can be considered an official statement for purposes of Article 107, Uniform Code of Military Justice, 10 USC § 907. I have some difficulty in evaluating the officiality of this statement in terms of its apparent unreliability. Instead, the purported anonymity of the letter or communication has bearing on whether appellant actually made a statement and whether a statement made in this fashion can be considered official. Arguably, official statements are statements made by named persons for government purposes and in some more or less recognized form.

Article 107 states:

> *Any person subject to this chapter who, with intent to deceive, signs any false record, return, regulation, order, or other official document, knowing it to be false, or makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct.*

(Emphasis added.) Appellant caused a third party to write a letter to command authorities. He dictated the subject matter of the letter, including the deception as to the true author's identity. Finally, he delivered this letter secretly to three duty stations within the command. Although appellant did not write the letter or sign it, his conduct clearly amounts to making a false statement within the broad language of Article 107. *See* Art. 77, UCMJ, 10 USC § 877. *See also United States v. Barber,* 881 F.2d 345 (7th Cir.1989).

A second question exists whether appellant's deception as to the true author's particular identity deprives his statement of its officiality. I think not. The letter clearly implies its author is a member of the command but not appellant. In my opinion submission of statements by an unidentified command member concerning the command's mission is sufficiently official to come within the scope of Article 107. *See also United States v. Popow*, 821 F.2d 483, 485–88 (8th Cir.1987). In these circumstances, as explained by Chief Judge Everett, the form of appellant's statement is no bar to its officiality.